UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

INAAM ALSHEIKHMOHAMMED,

                          Plaintiff,

v.                                                      Case No. 6:14-CV-461 (GTS)

CAROLYN W. COLVIN,
Commissioner of Social Security,

                          Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OFFICE OF PETER M. HOBAICA, LLC            B. BROOKS BENSON, ESQ.
  Counsel for Plaintiff
2045 Genesee St.
Utica, NY 13501

U.S. SOCIAL SECURITY ADMIN.                EMILY M. FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this Social Security action filed by Inaam

Alsheikhmohammed ("Plaintiff") against the Commissioner of Social Security

("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3),

are the parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 16, 17.)  For

the reasons set forth below, Plaintiff's motion is granted in part and denied in part and

Defendant's motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born on February 19, 1966. (T. 120.)  She completed high school.
(T. 140.)  Generally, Plaintiff's alleged disability consists of depression and dizziness.
(T. 139.)  Her alleged disability onset date is May 26, 2011. (T. 120.) She has no
previous work experience. (*Id.*)

### B.    Procedural History

On December 14, 2011, Plaintiff applied for Supplemental Security Income
("SSI") under Title XVI of the Social Security Act. (T. 120.) Plaintiff's application was
initially denied, after which she timely requested a hearing before an Administrative Law
Judge ("the ALJ").  On October 23, 2012, Plaintiff appeared before the ALJ, John P.
Ramos. (T. 32-47.) On December 4, 2012 the ALJ issued a written decision finding
Plaintiff not disabled under the Social Security Act (T. 9-27.)  On February 28, 2014, the
Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's
decision the final decision of the Commissioner. (T. 1-4.) Thereafter, Plaintiff timely
sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and
conclusions of law.  (T. 9-27.)  First, the ALJ found Plaintiff had not engaged in
substantial gainful activity since the application date of December 14, 2011.  (T. 14.)
Second, the ALJ found Plaintiff had the severe impairments of depression,
posttraumatic stress disorder ("PTSD"), and history of peripheral vertigo. (*Id.*) Third, the
ALJ found Plaintiff did not have an impairment that meets or medically equals one of the

listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 15-17.)

Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform

"light work," except:

> she should avoid climbing ladders or scaffolds, and she should not work or balance at unprotected heights or with dangerous machinery. [Plaintiff] retain[ed] the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentrations for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact with others to the extent necessary to carry out simple tasks; and handle reasonable levels of simple, work-related stress, in that she [could] make occasional simple decisions directly related to the completion of her tasks in a stable, unchanging work environment.

(T. 17.)[1]

Fifth, the ALJ determined there were jobs that exist in significant numbers in the

national economy Plaintiff could perform. (T. 20.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes nine separate arguments in support of her motion for judgment on

the pleadings.  First, Plaintiff argues she meets Listings §§ 12.04 and 12.06. (Dkt. No.

16 at 10-13 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ erred in weighing the

opinion evidence in the record. (*Id.* at 13-17.) Third, Plaintiff argues the ALJ erred in

failing to consider the medical source statement provided by Tatyana Misyulya, M.D.

(*Id.* at 17-18.) Fourth, Plaintiff argues the ALJ erred in failing to find Plaintiff has severe

impairments of the neck and lower back, and obesity. (*Id.* at 18-20.) Fifth, the Plaintiff

---

[1]     Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 416.967(b)

argues the ALJ erred in relying on Global Assessment of Functioning ("GAF") scores in his RFC finding. (*Id.* at 20-21.)[2] Sixth, the Plaintiff argues the ALJ erred in finding Plaintiff "illiterate and unable to communicate in English" but retained the ability to perform light work without seeking the opinion of a vocational expert ("VE"). (*Id.* at 21-22.) Seventh, the Plaintiff argues the ALJ erred in finding Plaintiff had the RFC for light work involving simple instructions, simple tasks, and simple stress without seeking the opinion of a VE. (*Id.* at 22-23.) Eighth, Plaintiff argues the ALJ erred in failing to set forth specific required findings supporting his opinion Plaintiff could perform light work. (*Id.* at 23-24.) Ninth, and lastly, Plaintiff argues the ALJ erred in failing to set forth required findings to substantiate his rejection of Plaintiff's testimony as to pain and limitations as not credible. (*Id.* at 24-25.)

**B.  Defendant's Arguments**

In response, Defendant makes essentially seven arguments.  First, Defendant argues the ALJ properly considered the opinion evidence regarding Plaintiff's mental impairments.  (Dkt. No. 17 at 5-17 [Def.'s Mem. of Law].)  Second, Defendant argues the AC properly considered Dr. Misyulya's physical RFC assessment. (*Id.* at 17-19.) Third, Defendant argues the ALJ properly considered all of Plaintiff's impairments. (*Id.* at 19-21.) Fourth, Defendant argues the ALJ properly considered Plaintiff's illiteracy and inability to communicate in English. (*Id.* at 21-22.) Fifth, the Defendant argues the ALJ was not required to seek the opinion of a VE. (*Id.* at 22-23.) Sixth, the Defendant argues remand is not warranted for a function-by-function analysis. (*Id.* at 23.) Seventh, and lastly, Defendant argues the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 23.)

---

[2]        The American Psychiatric Association ("APA") recognized the GAF scale as a means of tracking clinical progress of individuals with respect to psychological, social, and occupational functioning. *Diagnostic and Statistical Manual of Mental Disorders,* at 32 (4th ed. 2000).

III.     **RELEVANT LEGAL STANDARD**

A.       **Standard of Review**

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g) and 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

Plaintiff's offers a host of arguments in support of her brief. In an attempt to address her arguments efficiently, this Court will address them in a consolidated manner.

### A.    Whether the ALJ Properly Determined Plaintiff Did Not Meet a Listing at Step Three.

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 17 at 14 [Def.'s Mem. of Law]).  The Court adds the following analysis.

Plaintiff argues she meets Listings §§ 12.04: Affective disorders and 12.06: Anxiety-related disorders, based on the medical opinion of Dr. Misyulya. (Dkt. No. 16 at 10-13 [Pl.'s Mem. of Law].) Defendant counters, although the ALJ did not specifically address Dr. Misyulya's opinion at step three, the ALJ's decision as a whole supports his step three determination. (Dkt. No. 17 at 14 [Def.'s Mem. of Law].)

The ALJ determined at step three Plaintiff did not meet or equal Listings §§ 12.04 or 12.06. (T. 15.) The ALJ analyzed the "paragraph B" criteria for the two listings. (*Id.*)[3] The ALJ found Plaintiff had mild restrictions in activities of daily living; mild difficulties in social functioning; and moderate difficulties in concentration, persistence or pace. (T. 15.)

---

[3]    To satisfy "paragraph B" criteria for both Listings, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1

The ALJ then examined the "paragraph C" criteria of each Listing.[4] Under Listing §12.04 the ALJ determined Plaintiff did not meet the criteria because she did not have repeated episodes of decompensation, each of extended duration and there was no evidence Plaintiff required a highly supportive living arrangement. (T. 16.) The ALJ analyzed the "paragraph C" criteria under Listing § 12.06.[5] He determined Plaintiff did not meet the criteria because restrictions in this area were due to a language barrier, not her mental health impairments. (*Id.*)

The Plaintiff first argues the ALJ erred in failing to discuss how Plaintiff meets the requirements of "paragraph A" of Listing §§ 12.04 and 12.06. (Dkt. No. 16 at 10-11 (Pl.'s Mem. of Law].) This is a fundamental misunderstanding of the Listings. For each Listing the "paragraph A" criteria must be met AND the criteria in "paragraph B" OR "paragraph C" must be met. In starting the discussion with paragraphs B and C, it is assumed Plaintiff's impairment met the criteria of paragraph A.

The "paragraph A" criteria establishes the presence of an impairment (or combination of impairments) that triggers a review of that particular Listing. For example, Listing § 12.04 addresses affective disorders. Paragraph A of Listing § 12.04 provides the criteria for establishing an affective disorder; such as medically documented evidence of depressive syndrome with at least four of the symptoms listed, such as sleep disturbance or decreased energy. See 20 C.F.R. Part 404, Subpart P,

---

[4]     The "paragraph C" criteria of Listing § 12.04 requires: Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. 20 C.F.R. Part 404, Subpart P, App. 1.

[5]     The "paragraph C" criteria of Listing § 12.06 requires: complete inability to function independently outside the area of one's home. 20 C.F.R. Part 404, Subpart P, App. 1.

App. 1. Here, the ALJ determined at step two Plaintiff suffers from the severe mental impairments of depression and PTSD. (T. 14.) Therefore, the "paragraph A" criteria were met, in Plaintiff's favor, and the ALJ did not harm Plaintiff in failing to provide a detailed discussion of how Plaintiff satisfied "paragraph A" requirements.

Plaintiff next argues the ALJ erred in failing to discuss the medical opinion of Dr. Misyulya in his step three analysis. (Dkt. No. 16 at 11-13 [Pl.'s Mem. of Law].)

Dr. Misyulya provided two medical source statements regarding Plaintiff's mental impairments, both dated November 13, 2012. (T. 355-359, 360-363.) At the time of completing the statements Dr. Misyulya reported only treating Plaintiff twice for thirty minutes each session. (T. 355.) She opined Plaintiff had marked limitations in the areas of activities of daily living; maintaining social functioning; and maintaining concentration, persistence or pace.[6] Dr. Misyulya opined Plaintiff's anxiety caused a complete inability to function independently outside the area of her home. (T. 358.) Although the ALJ did not discuss this particular opinion in his step three analysis, he did discuss it in his RFC analysis. *See Berry,* 675 F.2d at 469 (finding that a court may be able "to look to other portions of the ALJ's decision ... in finding that his determination was supported by substantial evidence....")

In the ALJ's RFC analysis he discussed Dr. Misyulya's medical source statements and his reasoning for providing those statements "little weight." (T. 19.) Whether the ALJ's evaluation of Dr. Misyulya's opinion in formulating his RFC was appropriate is discussed later. For the purpose of his step three analysis, the ALJ did consider the opinion evidence of Dr. Misyulya, as the ALJ discussed the opinion

---

[6] The statement completed by Dr. Misyulya defined marked as meaning more than moderate but less than extreme.

elsewhere in his decision. Failure to discuss Dr. Misyulya's opinion specifically at step three was harmless as the ALJ discussed the opinion elsewhere in his decision and the ALJ provided substantial evidence to support his conclusion that Plaintiff did not meet or equal a Listing.

Here, the ALJ provided a detailed discussion of his step three analysis and the evidence he relied on in making his decision. (T. 15-17.) The Plaintiff urges that this case is "exactly like" the case of *Hunt v. Astrue*, 06-CV-99, 2008 WL 3836406 (N.D.N.Y. Aug. 13, 2008), which was remanded for a proper step three evaluation. However, in *Hunt*, the court remanded because the ALJ "cited no medical evidence and provided very little reasoning to explain his [step three] findings." *Hunt*, at *10. Here, the ALJ cited specific medical evidence, Plaintiff testimony, and provided sufficient reasoning to explain his findings for the requirements of Listing §§ 12.04 and 12.06. Further, an assessment of mental impairments at step three does not require the same level of detailed functional analysis as step four and five require. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996). Therefore, the ALJ's step three determination was supported by substantial evidence.

### A. Whether the ALJ Properly Considered the Opinion Evidence Regarding Plaintiff's Mental Impairments.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law. (Dkt. No. 16 at 13-17, 20-21 [Pl.'s Mem. of Law]). The Court adds the following analysis.

Plaintiff argues throughout her brief the ALJ erred in providing "significant weight" to the opinion of Dr. Snow and only "little weight" to the opinion of Dr. Misyulya and Dr. Melnick. For the ease of analysis, the mental health portion of the medical record, and

subsequent mental health portion of the ALJ's RFC analysis, will be addressed first. The physical portion will be addressed in the subsequent section.

Plaintiff received mental health treatment from Dr. Snow, Dr. Misyulya, Benedette Melnick, NPP, Ph.D., and Joanne McPherson, LSCW-R[7], CASAC[8]. In formulating his mental RFC analysis, the ALJ relied heavily on the opinion evidence of Dr. Snow; however, the ALJ failed to discuss, or mention, the mental health treatment Plaintiff received from Ms. McPherson with the Upstate Cerebral Palsy Community Health & Behavioral Services Division.

To be sure, the ALJ was not required to mention or discuss every single piece of evidence in the record. *See Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983); *Berry,* 675 F.2d at 469; *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981). However, the ALJ cannot pick and choose the evidence from medical sources that support a particular conclusion and ignore the contrary evidence. *Walsh v. Colvin*, 1:13-CV- 0603, 2014 WL 4966142, at *9 (N.D.N.Y. Sept. 30, 2014), *see also Royal v. Asture*, 5:11-CV- 456, 2012 WL 5449610, at *6 (N.D.N.Y. Oct. 2, 2012) (while ALJ's are entitled to resolve conflicts in the record, they cannot pick and choose only evidence from the same sources that supports a particular conclusion.)

Here the ALJ placed questionable emphasis on Dr. Snow's opinion at the expense of the medical evidence on a whole, which presented a contrary and more restrictive view of Plaintiff's mental functional abilities. For the reasons stated below, this

---

[7]     Psychotherapy "R" Privilege: An LCSW who fulfills the requirements of the insurance law for supervised experience providing psychotherapy, is recognized in New York State as a reimbursable psychotherapist. The "R" privilege requires insurance carriers to provide reimbursement for psychotherapy services whenever a health insurance contract includes reimbursement of qualified psychologists and psychiatrists. http://www.op.nysed.gov/prof/sw/lcswprivilege.htm

[8]     Credentialed Alcoholism and Substance Abuse counselor

matter is remanded for a more thorough and balanced analysis of all the medical evidence in the record.

Plaintiff received comprehensive mental health treatment from Ms. McPherson, a licensed social worker. While opinions from social workers are not considered "acceptable medical sources," such opinions are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." 20 C.F.R. § 416.913, *see also* SSR 06–03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); *see also White v. Comm'r,* 302 F.Supp.2d 170, 174–76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); *Allen v. Astrue,* 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); *Bergman v. Sullivan,* 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

This Court is mindful of the fact that the Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." *Diaz v. Shalala,* 59 F.3d 307, 313–14 (2d Cir.1995). However, here the question of appropriate weight is not even at issue, because the ALJ provides no discussion of Ms. McPherson's opinion. Therefore, this Court is not aware if the ALJ even considered Ms. McPherson's opinion in his mental RFC analysis.

Ms. McPherson began treating Plaintiff as a referral from Dr. Snow. (T. 246.) She provided mental health counseling from December 12, 2011 through October 29, 2012. (T. 246-332.) Ms. McPherson worked in conjunction with Dr. Melnick in providing talk therapy and medication, as treatment records also contain psychopharmacology records. (T. 339-345.) Of note, the ALJ credits Dr. Snow for providing Plaintiff with mental health treatment, which he did from October 2011 until he referred Plaintiff to Ms. McPherson in December of 2011. Although Dr. Snow continued to treat the Plaintiff, it is apparent from the record that Ms. McPherson and Dr. Melnick took primary control of Plaintiff's mental health needs, including medication.

In December 2011 Ms. McPherson's treatment notes indicated Plaintiff complained of an inability to sleep, feelings of anxiousness, lack of enjoyment in daily activities, and she felt "like dying." (T. 246.) Ms. McPherson noted symptoms of severe fatigue, heart palpitations, and dizziness. (T. 248.) In January 2012, Ms. McPherson noted Plaintiff appeared depressed with a flat affect. (T. 249.) Plaintiff again reported symptoms of a racing heart, fear, panic, no energy and body trembles. (*Id.*) Ms. McPherson stressed the importance of a routine to which Plaintiff responded she tried to conduct a normal life, but symptoms would escalate and caused her to "retreat[] to her bedroom." (T. 249.) In March 2012, Ms. McPherson noted Plaintiff was depressed with a flat affect. (T. 285.) During the March session Plaintiff described her fearfulness as causing a "shaky" feeling throughout her body which left her weak and exhausted. (*Id.*) In April 2012, Plaintiff felt medication was helping her depression, but she still had a sense of fear. (T. 290.) She reported she would become so overcome by fear that she could not even shower by herself. (*Id.*)

During her psychiatric evaluation in April 2012, Dr. Melnick observed Plaintiff's insight and judgment were appropriate; however, Plaintiff became "overwhelmed very easily." (T. 292.) Plaintiff informed Dr. Melnick that she found the noise and light from the television "overwhelming." (*Id.*) Dr. Melnick opined Plaintiff's memory was intact, but she could not abstract, generalize, or complete serial sevens. (*Id.*) Plaintiff complained that her symptoms of depression, anxiety and panic, together with nightmares and flashbacks interfered with her activities of daily living. (*Id.*) Dr. Melnick assigned her a GAF score of 50 at that time. A GAF score of 41 to 50 indicates "serious symptoms or any serious impairment in social, occupation, or school functioning." DSM–IV–TR, at 34.

Although the ALJ did not discuss Ms. McPherson's treatment of Plaintiff in analyzing her RFC, the ALJ did provide a discussion of his mental RFC analysis. The ALJ provided "significant weight" to Dr. Snow's opinion regarding Plaintiff's mental health limitations, "some weight" to Dr. Noia and Dr. Butensky, and "little weight" to Dr. Misyulya and Dr. Melnick. (T. 18-19.) In affording "significant weight" to the opinion of Dr. Snow, the ALJ reasoned he was Plaintiff's treating physician, his opinion was consistent with a GAF score of 60, treatment notes indicated a decrease in symptoms, and his opinions were consistent with "very conservative" treatment and lack of hospitalization. (T. 19.)[9]

The Plaintiff asserts Dr. Snow's medical source statement should be afforded less weight because it was "unclear" and "ambiguous" (Dkt. No. 16 at 15 [Pl.'s Mem. of Law].) In June 2012 Dr. Snow completed a medical source statement regarding Plaintiff's mental abilities. (T. 320-325.) Dr. Snow opined Plaintiff had only "mild"

---

[9] The GAF score of 60 was assigned to Plaintiff by Dr. Melnick on September 20, 2012. The ALJ afforded Dr. Melnick's opinion "little weight," yet he placed significant weight on her one time GAF score of 60. A GAF score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* DSM-IV at 34.

impairments in her ability to understand and remember simple instructions; carry out simple instructions; and carry out complex instructions. (T. 326.) He opined Plaintiff had no limitations in her ability to interact appropriately with supervisors, co-workers and the public. (T. 327.) Plaintiff stresses Dr. Snow's statement is unclear because he originally indicated Plaintiff did have limitations in her ability to interact with others, but then indicated she did not have difficulty. (Dkt. No. 16 at 15 [Pl.'s Mem. of Law].) However, it is apparent from Dr. Snow's report that his original answer, that she did have limitations, was in error. Dr. Snow clearly wrote the word "error" and provided his signature and date next to his incorrect choice. (T. 327.) Therefore, Dr. Snow's form, in and of itself, was not unclear or ambiguous. However, for the reasons discussed here, the ALJ erred in choosing to rely almost exclusively on Dr. Snow's opinion and in doing so, glossing over other relevant and contrary evidence in the record.

The Plaintiff urges the adoption of Dr. Misyulya's opinion, which was outlined in Part IV.A. The ALJ correctly points out that Dr. Misyulya had a very limited contact with Plaintiff. (T. 19.) Contrary to Plaintiff's assertions, the fact Dr. Misyulya only treated her twice was not "irrelevant,"(Dkt. No. 16 at 14 [Pl.'s Mem. of Law]), because "frequency of examination" is a relevant factor to consider when affording a medical opinion weight. 20 C.F.R. § 416.927(c)(2). The ALJ further reasoned Dr. Misyulya's didn't examine the Plaintiff for the entire period for which she was seeking disability and her opinion is inconsistent with Plaintiff's GAF score of 60. (T. 20.)

Although the ALJ does provide an analysis for the weight he afforded Dr. Misyulya, the ALJ's rational is thin. Dr. Misyulya may have only treated Plaintiff twice; however, she provided detailed treatment notes and a completed medical source statement. (T. 346-350, 355-359.) Further, the ALJ erroneously placed significant

15

emphasis on Plaintiff's GAF score of 60 as definitive support of his reasoning in affording her opinion less weight.

Although a GAF score is opinion evidence, it should be considered in the context of the record and not as a stand-alone indicator of Plaintiff's ability (or inability) to function. "The GAF score is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler,* 546 F.3d 260, 262, n. 1, *quoting* DSM–IV, at 32.

Here, the ALJ used Plaintiff's GAF score of 60 as stand-alone medical evidence in support for providing "little" or "some" weight to medical opinions in the record, indicating that their medical findings are inconsistent with a GAF score of 60. The ALJ cited to the GAF score in his analysis of each medical opinion concerning mental limitations in his decision. (T.19-20.) Throughout the record Plaintiff's lowest GAF score was 50 in April 2012 (T. 293) and highest of 60 in September 2012 (T. 338). Contrary to the ALJ's reasoning, a GAF score of 60 actually supports the bulk of the medical evidence regarding Plaintiff's mental limitations.

Dr. Noia opined Plaintiff was capable of understanding and following simple tasks; she may have difficulty attending to a routine and maintaining a schedule; she may have difficulty dealing with stress; and she had impaired attention and concentration. (T. 251-254.) The GAF score was also consistent with Dr. Misyulya's observation that Plaintiff had "moderate" limitations in her ability to make judgments; carry out simple instructions; understand and remember complex instructions; and carry out complex instructions. (T. 360.) A GAF score of 60 would be inconsistent with Dr. Snow's opinion that Plaintiff had only "mild" or no limitations in her ability to carry out work related mental activities. (T. 19, referring to T.326.) Dr. Snow's opinion would be

more consistent with a GAF score of 61 or higher.[10] Although an ALJ may take a

Plaintiff's GAF score into consideration when formulating his RFC analysis, it is

improper for a GAF to replace actual medical evidence such as treatment notes and

medical findings that document Plaintiff's level of ability to function.

As a whole, the ALJ's analysis of Plaintiff's mental functioning in his RFC

analysis is flawed. The ALJ failed to discuss the medical evidence provided by Ms.

McPherson was in error as the evidence provided a contrary opinion to that of Dr.

Snow. The opinion evidence of Ms. McPherson, together with the opinion evidence of

Dr. Noia and Dr. Misyulya, provided a more restrictive view of Plaintiff's mental

functional abilities. Further, the ALJ improperly used Plaintiff's GAF score as stand-

alone evidence. Therefore, this matter should be remanded for a proper analysis of the

medical evidence regarding Plaintiff's mental functional ability, specifically, the ALJ

should address Ms. McPherson's opinion evidence in accordance with the factors

outlined in 20 C.F.R. § 416.927(c).

### B.    Whether the ALJ Properly Considered the Opinion Evidence Regarding Plaintiff's Physical Impairments.

#### 1.    Whether the AC Properly Considered Additional Evidence

After carefully considering the matter, the Court answers this question in the

affirmative, in part for the reasons stated in Defendant's memorandum of law.  (Dkt. No.

17 at 17-18 [Def.'s Mem. of Law]).  The Court adds the following analysis.

Plaintiff argues that "new and material" evidence was submitted to the AC

consisting of a physical medical source statement completed by Dr. Misyulya regarding

---

[10]    61 - 70 Some mild symptoms (e.g., depressed mood and mild insomnia) *or* some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV, at 34.

Plaintiff's physical impairments; however, the Plaintiff does not argue the AC failed in not accepting Plaintiff's request for review. (Dkt. No. 16 at 17 [Pl.'s Mem. of Law].) This Court agrees with the Defendant, the AC correctly determined the additional evidence was not "contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b).

### 2. Whether the ALJ's Step Two Determination Was Proper

After carefully considering the matter, the Court answers this question in the affirmative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 20 [Def.'s Mem. of Law]). The Court adds the following analysis.

Plaintiff argues the ALJ erred in failing to find Plaintiff's neck and back impairments, and obesity, severe at step two. (Dkt. No. 16 at 17-18 [Pl.'s Mem. of Law].) At step two the ALJ determined Plaintiff had the severe impairments of depression, PTSD and vertigo. (T. 14.)

The ALJ's decision discussed Plaintiff's physical limitations as provided by Dr. Snow and consultative examiner Joseph Vilogi, M.D. Where, as here, "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010), *see also* 20 C.F.R. § 416.923 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). The ALJ's failure to find Plaintiff's back and neck impairment, and obesity, severe at step two of the sequential analysis is harmless error. *See Ellis v. Comm'r of Soc. Sec.*, 11-CV-2305,

2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012).  Therefore, remand is not necessary on this basis.

### 3.    Whether the ALJ Properly Assessed Plaintiff's Physical Limitations in His RFC Analysis

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Plaintiff's memorandum of law.  (Dkt. No. 16 at 19 [Pl.'s Mem. of Law]).  The Court adds the following analysis.

As with his mental RFC analysis, the ALJ improperly concentrated on the opinion evidence of Dr. Snow to the detriment of other relevant and contrary evidence. The ALJ appears to have not taken into consideration the medical opinion evidence supplied by Dr. Misyulya regarding Plaintiff's physical impairments. The ALJ provides a discussion of Dr. Misyulya's opinion regarding Plaintiff's mental impairments; however, provides no discussion of her treatment notes which contain physical examinations as well. (T. 19.) Of specific interest is the limiting effects of Plaintiff's vertigo, which the ALJ did find to be a severe impairment. Dr. Misyulya first opined Plaintiff had no dizziness and vertigo except only after sudden changes in position. (T. 351.) However, Plaintiff returned four days later with her daughter due to concerns that Plaintiff's language barrier prevented Dr. Misyulya from obtaining an accurate medical history. (T. 346.) At that visit, Plaintiff's daughter expressed concerns that Plaintiff had frequent dizziness and balance problems. (*Id.*) Dr. Misyulya then noted Plaintiff had dizziness upon standing, walking up stairs, and her dizziness caused difficulty in concentrating. (T. 347.) Dr. Misyulya also observed abnormal gait and stance. (T. 348.)

Dr. Misyulya's observations are supported by the observations of Dr. Vilogi. Dr. Vilogi noted Plaintiff  had an unsteady gait, was "entirely dependent" for getting on and

off the exam table, and was dependent on daughter for walking and dressing. (T. 256.) Dr. Vilogi opined Plaintiff had "marked" limitations in her ability to stand and walk, and she should avoid heights and operating heavy machinery. (T. 258.)

Given that this matter is being remanded for a proper evaluation of other medical opinion evidence, the ALJ should also take care to re-evaluate the opinion evidence regarding Plaintiff's physical limitations, specifically the opinion evidence of Dr. Misyulya's and Dr. Vilogi regarding limitations due to Plaintiff's vertigo.

### C. Whether the ALJ Erred in Failing to Provide a Function-by-Function Analysis.

After carefully considering the matter, the Court answers this question in the negative, in part for the reasons stated in Defendant's memorandum of law. (Dkt. No. 17 at 23 [Def.'s Mem. of Law]). The Court adds the following analysis.

Plaintiff argues the ALJ erred in failing to provide a function-by-function analysis of Plaintiff's mental impairments and physical impairments. (Dkt. No. 16 at 16, 23-24 [Pl.'s Mem. of Law].)

A function-by-function analysis requires the ALJ to express "the RFC ... [not] in terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very heavy' ....," but instead in terms "of the individual's physical and mental capacities," so that it is "possible to determine whether the individual is able to do past relevant work...." SSR 96–8p. These functions include physical abilities such as "sitting, standing, walking, lifting, carrying, pushing, pulling," and mental abilities such as "understanding, remembering, carrying out instructions, and responding appropriately to supervision," and other abilities such as "the ability to tolerate environmental factors." *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir.2013) (citing 20 C.F.R. § 416.945, SSR

96–8p). In this Circuit, an ALJ's failure to perform a function-by-function analysis does not necessitate a per se remand. *Cichocki,* 729 F.3d at 177. Rather, "the relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Id.* Here, the ALJ did not err to provide a function-by-function analysis of Plaintiff's abilities. However, as stated in Part IV.B and C(3), the ALJ's RFC determination is not supported by substantial evidence and is therefore remanded on those grounds.

### D.    Whether the ALJ Properly Determined Plaintiff's Credibility.

Here, the ALJ found Plaintiff not credible, because her statements were inconsistent with objective medical evidence and she had no work history. (T. 18.) As this matter is being remanded for a proper evaluation of medical evidence in the record, it would be prudent for the ALJ to conduct a credibility assessment once that medical evidence is properly evaluated.

### E.    Whether the ALJ Was Required to Call On the Testimony of a VE.

Plaintiff argues the ALJ should have sought VE testimony. (Dkt. No. 16 at 21-23 [Pl.'s Mem. of Law].) As explained in Parts IV.B. and C. of this Decision and Order, the ALJ's RFC determination is not supported by substantial evidence.  Accordingly, the ALJ's determinations at step five of the sequential analysis is not based on substantial evidence. On remand, the ALJ may require the assistance of a VE to determine Plaintiff can perform other work. *See* 20 C.F.R. § 416.960.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) is **<u>GRANTED</u>** in part and **<u>DENIED</u>** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 17) is

**GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. §

405(g), for further proceedings consistent with this Decision and Order.

Dated:      July 1, 2015
              Syracuse, NY

Glenn T. Suddaby
U.S. District Judge